Filed 9/27/23

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| THE PEOPLE, | B323940 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA079332) |
| v. | |
| KENNY INKWON LEE, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge. Affirmed in part, reversed in part, and remanded with instructions.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Kenny Inkwon Lee appeals from the denial of his resentencing petition under Penal Code[1] former section 1170.95, since renumbered as section 1172.6. This is Lee's second petition; we affirmed the denial of his first one because he was convicted of murder under the provocative act doctrine, whereas the version of former section 1170.95 in effect at the time extended relief only to those convicted of murder under a felony murder or natural and probable consequences theory.

Subsequently, the Legislature amended former section 1170.95, expanding it to provide relief to defendants convicted under any theory in which malice was imputed to them based solely on their participation in a crime. The Legislature also amended the statute to encompass defendants convicted of attempted murder and manslaughter.

Lee filed his second petition under the amended statute, seeking resentencing for his murder and attempted murder convictions. He contended, inter alia, that the jury instructions at his trial permitted him to be convicted solely on the malicious provocative acts of his confederates in the underlying robbery, without any findings as to Lee's mental state. The resentencing court denied his petition without an evidentiary hearing, finding Lee was ineligible for relief as a matter of law.

Although recent case law, including our opinion addressing Lee's first petition, has held that a conviction for provocative act murder requires proof that the defendant personally harbored the mental state of malice, our review of the history of the provocative act doctrine reveals this was not the case when Lee was convicted in 1994. Under the then-applicable Supreme Court

---

[1] Unspecified statutory citations are to the Penal Code.

authority, a defendant could be convicted for a killing by a third party provoked by an accomplice's actions with malice aforethought, regardless of the defendant's personal mental state. Lee's jury was so instructed. We therefore conclude Lee may have been convicted under a theory of imputed malice, and thus, he is not barred as a matter of law from relief under section 1172.6.

We reject Lee's contention, however, that he is entitled to relief for his attempted murder conviction, which did not implicate the provocative act doctrine nor any theory of imputed malice.

Accordingly, we affirm in part, reverse in part, and remand for the resentencing court to issue an order to show cause regarding Lee's murder conviction.

## BACKGROUND

### 1. *Facts as summarized in our opinion from Lee's direct appeal*

We quote the factual summary from our 1996 opinion addressing Lee's appeal from his conviction. (*People v. Lee* (May 28, 1996, B088132 [nonpub. opn.] (*Lee I*).) As we address in our Discussion, *post*, we no longer can rely on factual summaries from prior appellate opinions to determine eligibility for resentencing in section 1172.6 proceedings. (See *People v. Flores* (2022) 76 Cal.App.5th 974, 988 (*Flores*).) We provide the summary solely as context for the issues in the case.

"Three men arrived at a shopping center in a red sports car. While the driver (Chul Woong Choi) waited in the car, Lee and Joo Hyung Woo got out and went into a video store. Outside, a suspicious security guard (Agustin Nolasco) started to write down

3

the sports car's license number. Inside, Lee and Woo pointed guns at the video store's two employees, dragged them to the back of the store, beat them, and took their money and personal belongings. Lee and Woo then ransacked the store and took money from the cash register." (*Lee I*, *supra*, B088132.)

"Impatient, Choi (who was also carrying a gun) got out of the sports car, tried to open the door to the video store, and yelled to Lee and Woo, 'Hey, let's go.' As Lee and Woo ran out of the store, Nolasco (the guard) stepped out of his car and yelled (in English), 'What's going on?' In response, Lee and Choi pointed their guns at Nolasco and Nolasco, in turn, ducked down behind his open car door and grabbed his gun from his car. Lee and Woo got into the sports car and when Nolasco raised his head to see what was going on, Choi (then halfway into the driver's seat of the sports car) fired a shot at Nolasco. Nolasco shot back twice, hitting Choi. Lee (who was sitting next to Choi) stepped on the accelerator and, while shooting at Nolasco, drove slowly out of the parking lot." (*Lee I*, *supra*, B088132.)

"Nolasco ran into the video store, made sure everyone was all right, then went back outside where he found Choi's dead body face down on the ground where he had been dumped by Lee and Woo." (*Lee I*, *supra*, B088132.)

## 2. *Trial, conviction, and appeal*

A jury convicted Lee of the first degree murder of Choi, the attempted murder of Nolasco, two counts of robbery, and one count of receiving stolen goods, and found firearm enhancements true. The trial court sentenced Lee to 28 years to life for the murder, to run concurrently with a determinate sentence of 16 years 4 months for the other counts.

4

We affirmed the judgment.  (*Lee I*, *supra*, B088132.)  We rejected, inter alia, Lee's argument that the evidence was insufficient to convict him for the murder of his accomplice Choi under the provocative act doctrine.  Lee contended on appeal that the evidence showed that Choi, not Lee, provoked Nolasco, and therefore Lee's conduct was not a proximate cause of Choi's death.  We concluded the evidence that Nolasco opened fire after Choi *and* Lee pointed guns at him established that "Lee's conduct was a substantial factor in causing the shooting, and the fact that Choi's own conduct was also a contributing factor does not relieve Lee of criminal responsibility for this killing."  (*Ibid.*)

### 3.     *First resentencing petition and appeal*

In February 2019, Lee filed a petition for resentencing pursuant to former section 1170.95 (Stats. 2018, ch. 1015, § 4), the predecessor to section 1172.6.  The resentencing court denied the petition without Lee present or represented by counsel.  The resentencing court found Lee's jury was instructed on provocative act murder, conviction for which requires a finding of "at least implied malice," and therefore Lee was ineligible for relief.  The resentencing court further found Lee's jury was instructed that it could not convict Lee of attempted murder unless he had express malice.

Lee appealed the denial of his petition, and we affirmed. (*People v. Lee* (2020) 49 Cal.App.5th 254 (*Lee II*).)  The appellate record as to that petition did not contain any of the trial or appellate record pertaining to Lee's original conviction, including any jury instructions.  (*Id.* at pp. 258, fn. 2, 260, fn. 3.)  At Lee's request, we took judicial notice of our 1996 opinion from Lee's original appeal.  (*Id.* at p. 258, fn. 2.)  We concluded our opinion

from the original appeal "provides sufficient information to resolve this appeal." (*Id.* at p. 260, fn. 3.)

In accordance with decisions from this division and others, we first held that when the resentencing court assessed whether Lee had made a prima facie showing for relief under former section 1170.95, the resentencing court could rely on the record of conviction, including our opinion from Lee's original appeal. (*Lee II*, *supra*, 49 Cal.App.5th at p. 262.) We also held the resentencing court could make this prima facie determination without first appointing counsel. (*Ibid.*)

As to the merits of Lee's petition, we held Lee was ineligible for relief because he had not been convicted under either the felony-murder rule or the natural and probable consequences doctrine, but instead, under the provocative act doctrine. (*Lee II*, *supra*, 49 Cal.App.5th at pp. 257–258.) We distinguished provocative act murder from the other two theories because provocative act murder " 'requires proof that the defendant personally harbored the mental state of malice . . . .' " (*Id.* at p. 264.) "Lee therefore cannot show that he 'could not be convicted of first or second degree murder because of changes to Section 188 or 189' as required for relief under section 1170.95, subdivision (a)(3)." (*Id.* at p. 265.)

The Supreme Court granted review of our decision and held it pending a decision in *People v. Lewis*. (July 15, 2020, S262459.) The high court subsequently issued its *Lewis* decision, holding that a petitioner under former section 1170.95 was entitled to appointed counsel upon filing of a facially sufficient petition, *before* the resentencing court evaluated the petitioner's prima facie showing. (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) The court further held that when evaluating the prima

6

facie showing, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 972.) Instead, the resentencing court must conduct an evidentiary hearing. (See *id.* at p. 971.)

The Supreme Court then dismissed review in *Lee II*, ordering our decision noncitable and nonprecedential to the extent our decision was inconsistent with *Lewis*. Because *Lewis* did not address the provocative act doctrine, our holding that Lee's murder conviction under that theory was ineligible for resentencing remained intact.

### 4.    *Second resentencing petition*

The Legislature amended former section 1170.95 effective January 1, 2022. (Stats. 2021, ch. 551, § 2.) On January 28, 2022, Lee filed a new petition under the amended former section 1170.95, indicating he had been convicted of murder, attempted murder, or manslaughter and could not presently be convicted given amendments to the Penal Code. The resentencing court appointed counsel and directed the district attorney to file a response. The district attorney opposed the petition, arguing defendants convicted of provocative act murder remain ineligible for relief. The district attorney's filing included a copy of the jury instructions from Lee's trial.

Lee's arguments in reply included that the particular instructions given to Lee's jury "d[id] not establish whether Mr. Lee's malice was imputed to him based solely on his participation in the underlying robbery and the provocative act of a co-perpetrator, or whether [Lee] was himself a provocateur."

7

After reviewing the parties' filings, the resentencing court denied Lee's petition, concluding Lee was ineligible for resentencing as a matter of law.[2]

Lee timely appealed.  We requested and received supplemental briefing regarding the development of the law of provocative act murder, including whether at the time of Lee's conviction, a conviction for provocative act murder required proof that the defendant personally harbored the mental state of malice, or whether the defendant could be convicted based on provocation by an accomplice who acted with express or implied malice.

## DISCUSSION

**A.     Senate Bill Nos. 1437 and 775**

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015) amended sections 188 and 189 of the Penal Code to "eliminate[ ] natural and probable consequences liability for murder as it applies to aiding and abetting, and [to] limit[ ] the scope of the felony-murder rule." (*Lewis*, *supra*, 11 Cal.5th at p. 957.)  As significant here, the amended section 188 provides that, except as stated in the amended section 189 governing

---

[2] It appears from the minute order the resentencing court made its prima facie determination without holding a hearing. (See § 1172.6, subd. (c) ["After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief."].)  Lee does not raise this as an issue on appeal. Regardless, our holding that Lee is entitled to an evidentiary hearing resolves any prejudice caused by lack of hearing at the prima facie stage.

felony murder, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)

The bill also added former section 1170.95, "which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief."  (*Lewis*, *supra*, 11 Cal.5th at p. 957.)  The original version of former section 1170.95 provided that, assuming certain conditions were met, "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition . . . to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts."  (Former § 1170.95, subd. (a) (Stats. 2018, ch. 1015, § 4.)  Lee's first petition, which we addressed in *Lee II*, was filed under this original version of the statute.

In 2021, the Legislature passed Senate Bill No. 775 (2020–2021 Reg Sess.) (Stats. 2021, ch. 551), amending former section 1170.95 effective January 1, 2022.  In addition to providing relief for those convicted of felony murder or under the natural and probable consequences doctrine, the amended statute extended relief to defendants convicted under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime."  (Former § 1170.95, subd. (a) (Stats. 2021, ch. 551, § 2).)  The amended statute also expanded the categories of offenses eligible for relief to include attempted murder and manslaughter as well as murder.  (*Ibid.*)  The Legislature later renumbered former section 1170.95 as section 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.)

If a petitioner makes a prima facie showing of relief under section 1172.6—that is, a showing that the petitioner was convicted of murder, attempted murder, or manslaughter under a theory no longer valid under the amended Penal Code—the resentencing court must issue an order to show cause for an evidentiary hearing.  (§ 1172.6, subd. (c); *People v. Hurtado* (2023) 89 Cal.App.5th 887, 891.)  At that hearing, the prosecution must prove beyond a reasonable doubt that the petitioner remains guilty of murder or attempted murder despite the amendments to section 188 and 189.  (§ 1172.6, subd. (d)(3).)

If, however, the record of conviction or the court's own documents indicate the petitioner is ineligible for resentencing as a matter of law, the resentencing court may deny the petition without issuing an order to show cause.  (See *Lewis*, *supra*, 11 Cal.5th at p. 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless."].)  In relying on the record of conviction at the prima facie stage, however, the resentencing court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 972.)  Such factfinding, instead, must take place following an evidentiary hearing.  (*People v. Harden* (2022) 81 Cal.App.5th 45, 51 (*Harden*).)

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*Harden*, *supra*, 81 Cal.App.5th at p. 52.)

10

**B. Lee's Murder Conviction Does Not Bar Him as a Matter of Law From Relief Under Section 1172.6**

Because the version of former section 1170.95 in effect at the time of Lee's first resentencing petition limited relief to those convicted of felony murder or murder under the natural and probable consequences doctrine, our opinion in *Lee II* focused on whether Lee had been convicted under either of those theories. We concluded, correctly, that he had not, instead having been convicted of provocative act murder.

Now, however, section 1172.6 has been expanded to afford relief to defendants convicted not only for felony murder or natural and probable consequences murder, but also under any theory in which malice was imputed to the defendant solely based on the defendant's participation in a crime. (§ 1172.6, subd. (a).) We thus examine whether provocative act murder is such a theory.

Although we concluded in *Lee II* that conviction for provocative act murder " 'requires proof that the defendant personally harbored the mental state of malice' " (*Lee II*, *supra*, 49 Cal.App.5th at p. 264), our review of the case law indicates this element is a fairly recent development of the past 15 years or so. As we explain, and as the Attorney General concedes, at the time of Lee's conviction, the law was different, and an accomplice could be convicted so long as his confederate committed a malicious and provocative act, regardless of the defendant's personal mental state. Thus, Lee's conviction under the provocative act doctrine does not, as a matter of law, bar relief under section 1172.6.

We begin with a summary of the case law developing the provocative act doctrine.

### 1. Provocative act murder

#### a. *Washington* and *Gilbert*

The provocative act murder doctrine arose from two Supreme Court cases authored by Chief Justice Traynor and decided within months of one another, *People v. Washington* (1965) 62 Cal.2d 777 (*Washington*), and *People v. Gilbert* (1965) 63 Cal.2d 690 (*Gilbert*), reversed on other grounds in *Gilbert v. California* (1967) 388 U.S. 263.

In *Washington*, the court held that a defendant could not be convicted of murder under the felony-murder rule for the death of his accomplice at the hands of an intended robbery victim. (*Washington, supra*, 62 Cal.2d at pp. 779, 783.) The court explained that, as codified in section 189, the felony-murder rule applies to killings "committed in the perpetration or attempt to perpetrate" specified crimes.[3] (*Washington*, at p. 780.) The rule "ascribes malice aforethought" to the perpetrators without the need to prove "an intent to kill or an intent with conscious disregard for life to commit acts likely to kill." (See *ibid.*)

"When a killing is not committed by a robber or by his accomplice but by his victim," however, "malice aforethought is not attributable to the robber, for the killing is not committed by him in the perpetration or attempt to perpetrate" the underlying crime. (*Washington, supra*, 62 Cal.2d at p. 781.) Thus, concluded the court, "for a defendant to be guilty of murder under the felony-murder rule the act of killing must be committed by the defendant or by his accomplice acting in furtherance of their common design." (*Id.* at p. 783.)

---

[3] The quoted language is materially identical to the current version of section 189.

In reaching this conclusion, the court noted that "[a] defendant need not do the killing himself . . . to be guilty of murder," and could be "vicariously responsible under the rules defining principals and criminal conspiracies." (*Washington*, *supra*, 62 Cal.2d at pp. 781–782.) "All persons aiding and abetting the commission of a robbery are guilty of first degree murder when one of them kills while acting in furtherance of the common design." (*Id.* at p. 782.)

The court further observed that defendants also could be found guilty of murder for "initiat[ing] gun battles . . . if their victims resist and kill. Under such circumstances, 'the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death' [citation], and it is unnecessary to imply malice by invoking the felony-murder doctrine." (*Washington*, *supra*, 62 Cal.2d at p. 782.) The court did not address whether this principle might apply to the defendant in *Washington*, and instead reversed his murder conviction. (*Id.* at pp. 784–785.)

*Gilbert* involved the gun battle fact pattern contemplated in *Washington*. Gilbert, a bank robber, opened fire at police, who fired back, killing his accomplice, Weaver. (*Gilbert*, *supra*, 63 Cal.2d at pp. 696–697.) Gilbert was convicted of Weaver's murder, as was another confederate, King, who was not present at the robbery or gun battle, but who assisted with obtaining Gilbert's and Weaver's getaway vehicle. (*Id.* at pp. 698, 703.)

Citing *Washington*, the Supreme Court reversed Gilbert's and King's convictions for Weaver's murder: "Although the evidence in the present case would support a conviction of first degree murder on the ground that Weaver was killed in response

13

to a shooting initiated by Gilbert, the [trial] court did not instruct the jury on that ground, but gave an erroneous instruction that defendants could be convicted of murder for that killing without proof of malice and solely on the ground that they committed a robbery that was the proximate cause of their accomplice's death." (*Gilbert, supra,* 63 Cal.2d at pp. 703–704.)

To provide guidance for retrial, the court laid out "principles [that] may be invoked to convict a defendant of first degree murder for a killing committed by another." (*Gilbert, supra,* 63 Cal.2d at p. 704.) First, there must be "*[p]roof of malice aforethought.*" (*Ibid.*) The court noted that initiating a gun battle established implied malice under section 188, thus satisfying this element. (*Gilbert,* at p. 704.)

Second, "*[t]he killing must be attributable to the act of the defendant or his accomplice.* When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life." (*Gilbert, supra,* 63 Cal.2d at p. 704.)

Third, "*[v]icarious criminal liability.* Under the rules defining principals and criminal conspiracies, the defendant may be guilty of murder for a killing attributable to the act of his accomplice. To be so guilty, however, the accomplice must cause the death of another human being by an act committed in furtherance of the common design." (*Gilbert, supra,* 63 Cal.2d at p. 705.)

14

Fourth, "[w]hen murder is established under Penal Code sections 187 and 188 pursuant to the principles defined above, section 189 may properly be invoked to determine the degree of that murder. Thus, even though malice aforethought may not be implied under section 189 to make a killing murder unless the defendant or his accomplice commits the killing in the perpetration of an inherently dangerous felony [citations], when a murder is otherwise established, section 189 may be invoked to determine its degree." (*Gilbert, supra*, 63 Cal.2d at p. 705.)

Although the term was not used in *Washington* or *Gilbert*, later cases have referred to the theory of murder defined by the above principles as "provocative act murder." (*See, e.g.*, *People v. Sanchez* (2001) 26 Cal.4th 834, 839 & fn. 3; *In re Aurelio R.* (1985) 167 Cal.App.3d 52, 57.)

> ***b.*** Accomplice liability for provocative act murder after *Gilbert*

Although *Gilbert* established that provocative act murder, unlike felony murder, requires proof of malice aforethought, under that case it was sufficient that only the provocateur him- or herself—the perpetrator who initiates the gun battle, for example—acts with that mental state. The nonprovocateur accomplices would then be equally culpable "[u]nder the rules defining principals and criminal conspiracies." (*Gilbert, supra*, 63 Cal.2d at p. 705.) This is clear from *Gilbert*'s articulation of the provocative act murder rule itself, which imposes liability on the defendant when either "the defendant *or his accomplice*" commits a life-threatening act "with a conscious disregard for life." (*Id.* at p. 704.) Further, a "defendant may be guilty of murder for a killing attributable to the act of his accomplice" if

15

the accomplice's act is "committed in furtherance of the common [criminal] design." (*Id.* at p. 705.)

The Supreme Court confirmed in subsequent cases that a defendant could be guilty of provocative act murder based on the malicious and provocative acts of his confederates, without a showing that the defendant himself harbored malice. In *Taylor v. Superior Court* (1970) 3 Cal.3d 578 (*Taylor I*), overruled on other grounds by *People v. Antick* (1975) 15 Cal.3d 79 (*Antick*), liquor store employees shot at two robbers, Smith and Daniels, killing Smith. (*Taylor I*, at p. 581.) A third accomplice, Taylor, sat outside in the getaway car, and was not present during the robbery or the gun battle. (*Ibid.*) Taylor and Daniels were charged with Smith's murder. (*Id.* at p. 580.) The trial court denied Taylor's motion to set aside the murder charge, and he sought a writ of prohibition from the Supreme Court. (*Id.* at pp. 580–581.)

The Supreme Court held the murder charge was proper. (*Taylor I*, *supra*, 3 Cal.3d at p. 585.) Citing *Gilbert* and *Washington*, the court stated that "if [Taylor] were an accomplice to the robbery, he would be vicariously responsible for any killing attributable to the intentional acts of his associates committed with conscious disregard for life, and likely to result in death." (*Id.* at pp. 582–583, fn. omitted.) The court concluded the evidence from the preliminary hearing "discloses acts of provocation on the part of Daniels and Smith from which the trier of facts could infer malice," and therefore "the evidence supported the magistrate's finding that reasonable and probable cause existed to charge [Taylor] with first degree murder." (*Id.* at pp. 584–585.) The court did not discuss Taylor's individual

16

mental state or whether any of his own actions demonstrated malice.

Taylor's case returned to the Supreme Court following his conviction. (*People v. Taylor* (1974) 12 Cal.3d 686, 688, fn. 2 (*Taylor II*), overruled on other grounds by *People v. Superior Court (Sparks)* (2010) 48 Cal.4th 1 (*Sparks*).) The Supreme Court summarized its earlier *Taylor I* holding, stating that Taylor "might . . . be found guilty [of Smith's murder] on a theory of vicarious liability if it independently appeared *that his confederates entertained malice aforethought* [citation]." (*Taylor II*, at p. 691, italics added.) Taylor's accomplice Daniels had been acquitted in his separate trial, however. The court thus held the prosecution was collaterally estopped from basing Taylor's criminal liability on Daniels's alleged conduct, because the jury necessarily must have found Daniels's and his confederate, Smith's, acts were not "sufficiently provocative to support a finding of implied malice." (*Id.* at pp. 689, 691–692.)[4]

In *Antick, supra*, 15 Cal.3d 79, the Supreme Court held when the deceased himself is the sole provocateur, his nonprovocateur accomplice cannot be liable for murder because the provocateur did not cause the death of another but only his own death. (*Id.* at p. 91.) In dicta, however, the court provided an example demonstrating when a nonprovocateur accomplice would be liable for murder. The court posited a robbery committed by three perpetrators, the first of whom initiates a gun battle that results in the death of the second perpetrator.

---

[4] *Sparks* overruled *Taylor II*, holding "a verdict regarding one defendant has no effect on the trial of a different defendant," and "[n]onmutual collateral estoppel does not apply to verdicts in criminal cases." (*Sparks, supra*, 48 Cal.4th at p. 5.)

17

(*Id.* at p. 88.) The court explained that the first robber has "commit[ted] a homicide," because his conduct initiating the gun battle both established malice and was the proximate cause of the second robber's death. (*Ibid.*) Further, because "the robber initiating the gun battle is acting in furtherance of the common design of all three participants, the third robber as well may be held vicariously liable for the murder." (*Id.* at p. 89.)

In *People v. Caldwell* (1984) 36 Cal.3d 210, the Supreme Court rejected an argument that provocative act murder, like felony murder, " 'impos[ed] malice as to one crime because of [a] defendant's commission of another . . . .' [Citations.]" (*Id.* at pp. 222–223.) The court nonetheless reaffirmed that provocative act murder required that only one of several cofelons act with malice. The court explained, "[t]he proper focus on the individual culpability of accomplices is retained by the requirement that *one or more of them* engage in conduct" demonstrating implied malice. (*Id.* at p. 223, italics added.) "Only where *one or more of the co-felons* has thus exhibited a culpable, murderous state of mind does a resulting death predicate liability for murder." (*Ibid.*, italics added.)

Court of Appeal decisions establish that at the time of Lee's conviction in 1994, and for some years after, the principles of nonprovocateur liability first established in *Gilbert* and developed in *Taylor I* and *Antick* remained good law, including that a nonprovocateur defendant could be convicted of murder based on a finding that his provocateur accomplice acted with malice aforethought.

For example, in *People v. Mai* (1994) 22 Cal.App.4th 117 (*Mai*), disapproved on other grounds by *People v. Nguyen* (2000) 24 Cal.4th 756, the court explained that under the provocative

18

act doctrine, "it is a life-endangering act by a defendant *or surviving cofelon* that supplies the requisite implied malice to support a murder conviction." (*Mai*, at p. 125, italics added.) *Mai* favorably cited *Taylor I*, and explained, "[E]ven when the defendant on trial did not participate in the provocative act, he or she is nevertheless vicariously responsible for the surviving accomplice's conduct and may be convicted of murder in the death of the accomplice who is killed." (*Id.* at pp. 127–128 & fn. 9.) *Mai* posited a hypothetical akin to that of *Antick*, in which a getaway driver, despite having "engaged in no life-endangering conduct," was "vicariously liable" when a co-perpetrator opened fire on a security guard, who shot back and killed a third accomplice. (*Id.* at pp. 127–128, fn. 9.)

*People v. Garcia* (1999) 69 Cal.App.4th 1324 similarly relied on *Taylor I* for the proposition "that a nonprovocateur defendant could be charged with murder under the provocative act theory based on vicarious liability." (*Garcia*, at p. 1331, fn. 4.)

### c. *Concha*, *Gonzalez*, and *Mejia*

*People v. Concha* (2009) 47 Cal.4th 653 (*Concha*) was the first case in which our Supreme Court discussed provocative act murder in terms of the individual mental states of multiple surviving accomplices, in that case to analyze if, and under what conditions a defendant could be liable for willful, deliberate, and premeditated provocative act murder. In *Concha*, three men, Concha, Hernandez, and Sanchez, attempted to murder a fourth man, Harris. (*Id.* at p. 658.) Harris fought back and stabbed Sanchez to death. (*Ibid.*) The jury convicted Concha and Hernandez of the first degree attempted murder of Harris, and the first degree murder of Sanchez under the provocative act doctrine. (*Id.* at p. 659.) The question before the Supreme Court

19

was whether a killing by a third party in response to an attempted murder could support a first degree, as opposed to second degree murder conviction of the surviving perpetrators. (*Id.* at pp. 658, 660.)

The Supreme Court concluded yes, so long as the jury found "that the individual defendant *personally* acted willfully, and with deliberation and premeditation during the attempted murder." (*Concha, supra*, 47 Cal.4th at p. 666.) The court noted that, under section 189, murder is of the second degree except under specified circumstances, including when the killing is " 'willful, deliberate, and premeditated.' "[5] (*Concha*, at pp. 661–662.) The court also observed that, "[w]hile joint participants involved in proximately causing a murder ' "are tied to a 'single and common *actus reus*,' 'the individual *mentes reae* or levels of guilt of the joint participants are permitted to float free and are not tied to each other in any way. If their *mentes reae* are different, their independent levels of guilt . . . will necessarily be different as well.' " ' [Citations.]" (*Id.* at p. 662.) "[A] defendant charged with murder or attempted murder can be held vicariously liable for the actus reus of an accomplice, but, for murder, a defendant cannot be held vicariously liable for the mens rea of an accomplice." (*Id.* at p. 665.)

The court stated, "[A] defendant is liable for murder when the actus reus and mens rea elements of murder are satisfied. The defendant or an accomplice must proximately cause an

---

[5] Murder also is elevated to the first degree when committed in the perpetration or attempt to perpetrate specified felonies. (§ 189, subd. (a).) Attempted murder is not one of the specified felonies. (*Ibid.*; *Concha, supra*, 47 Cal.4th at p. 661, fn. 2.)

20

unlawful death, and the defendant must personally act with malice.  Once liability for murder is established in a provocative act murder case or in any other murder case, the degree of murder liability is determined by examining the defendant's personal mens rea and applying section 189.  Where the individual defendant personally intends to kill and acts with that intent willfully, deliberately, and with premeditation, the defendant may be liable for first degree murder for each unlawful killing proximately caused by his or her acts, including a provocative act murder.  Where malice is implied from the defendant's conduct or where the defendant did not personally act willfully, deliberately, and with premeditation, the defendant cannot be held liable for first degree murder." (*Concha, supra,* 47 Cal.4th at pp. 663–664.)

The court concluded the trial court had erred by failing to instruct the jury "that for a defendant to be found guilty of *first degree murder*, he *personally* had to have acted willfully, deliberately, and with premeditation when he committed the attempted murder." (*Concha, supra,* 47 Cal.4th at p. 666.)  The court remanded the case to the Court of Appeal for a determination whether the instructional error was prejudicial.[6] (*Concha,* at p. 666.)

---

[6] The fact the jury also convicted the defendants of first degree attempted murder did not resolve the issue because, as the Supreme Court explained, first degree attempted murder, as opposed to first degree murder, does not require proof that each individual defendant acted willfully, deliberately, and with premeditation.  (*Concha, supra,* 47 Cal.4th at p. 665.)  "For such an attempted murder, although each defendant must have the intent to kill, a defendant may be vicariously liable for the

21

Although *Concha* concerned the circumstances in which a
provocative act murder could be elevated to first degree murder,
its language indicated more broadly that a murder conviction,
whether first or second degree, requires proof of a defendant's
individual mental state.  (See *Concha*, *supra*, 47 Cal.4th at p. 663
["The defendant or an accomplice must proximately cause an
unlawful death, and the defendant must personally act with
malice"]; *id.* at p. 665 ["for murder, a defendant cannot be held
vicariously liable for the mens rea of an accomplice"]).

In *People v. Gonzalez* (2012) 54 Cal.4th 643 (*Gonzalez*), our
high court cited *Concha* for the broader principle that *all*
provocative act murder requires proof that the defendant
personally harbored malice:  "A murder conviction under the
provocative act doctrine . . . requires proof that the defendant
personally harbored the mental state of malice, and either the
defendant or an accomplice intentionally committed a provocative
act that proximately caused an unlawful killing."  (*Gonzalez*, at
p. 655, citing *Concha*, *supra*, 47 Cal.4th at pp. 660–661.)

Similarly, in *People v. Mejia* (2012) 211 Cal.App.4th 586,
our colleagues in Division Eight wrote:  "With respect to
the *mental* element of provocative act murder, a defendant
cannot be vicariously liable; he must personally possess the
requisite mental state of malice aforethought when he either
causes the death through his provocative act or aids and abets in
the underlying crime the provocateur who causes the death."  (*Id.*
at p. 603, citing *Concha*, *supra*, 47 Cal.4th at pp. 660, 662–663.)

---

premeditated and deliberate component of the mens rea of an
accomplice."  (*Id.*, citing *People v. Lee* (2003) 31 Cal.4th 613, 626.)

22

## 2. Lee was convicted of murder under a theory in which malice could have been imputed to him based solely on his participation in a robbery

As summarized above, until *Concha*, the Supreme Court had not separated out the mens rea of individual defendants in provocative act murder cases. Instead, the case law imposed culpability on all perpetrators of the underlying crime so long as the provocateur acted with malice, and did so in furtherance of the common criminal design. (*Antick*, *supra*, 15 Cal.3d at p. 89; *Taylor I*, *supra*, 3 Cal.3d at pp. 582–583; *Gilbert*, *supra*, 63 Cal.2d at pp. 704–705.)

This was the law in effect at the time of Lee's conviction in 1994, 15 years before *Concha*. That law is reflected in the instructions given to Lee's jury, which stated, "A homicide committed during the commission of a crime by a person who is not a perpetrator of such crime, in a reasonable response to an intentional provocative act likely to cause death by a perpetrator of the crime who is not the homicide victim, is considered in law to be an unlawful killing by the perpetrators of the crime. Malice is implied when the provocative life-threatening act was deliberately performed with knowledge of the danger to and with conscious disregard for human life."

The instruction continued, in relevant part, "In order to prove such crime, each of the following elements must be proved: [¶] 1. The crime of robbery was committed; [¶] 2. During the commission of such crime, defendant *or another surviving perpetrator* also intentionally committed a provocative life-threatening act which act was not necessary to the commission of the robbery; [¶] 3. The provocative life-threatening act was deliberately performed with knowledge of the danger to and with

23

conscious disregard for human life; and [¶] 4. Such act was sufficiently provocative and life threatening that another person not a perpetrator of the crime of robbery in a reasonable response thereto killed a perpetrator of such crime, and [¶] 5. The provocative life-threatening act was a proximate cause of the accomplice's death."  (Italics added.)

Consistent with *Gilbert*, *Taylor I*, and *Antick*, these instructions did not require the jury to find that Lee personally acted with malice.  Rather, the instructions allowed the jury to convict Lee of murder if "[t]he crime of robbery was committed," and "[d]uring the commission of such crime, . . . another surviving perpetrator . . . intentionally committed a provocative life-threatening act . . . [¶] . . . with knowledge of the danger to and with conscious disregard for human life."  Read this way, the instruction allowed a conviction without a finding as to Lee's personal mental state.

It is therefore conceivable that the jury found Lee guilty of murder not based on his own malicious conduct, but on that of a surviving co-perpetrator.  In so doing, the jury would have imputed malice to Lee solely based on his participation in the underlying robbery.  Although permissible in 1994, Lee "could not presently be convicted of murder" on this basis in light of Senate Bill No. 1437.  (§ 1172.6, subd. (a)(3); § 188, subd. (a)(3) ["Malice shall not be imputed to a person based solely on his or her participation in a crime."].)  Thus, Lee has made a prima facie showing of eligibility for resentencing.  The resentencing court must hold an evidentiary hearing to determine if, beyond a reasonable doubt, Lee is guilty of murder under the law as amended by Senate Bill No. 1457.  (§ 1172.6, subd. (d)(3).)

24

We recognize that under the facts as summarized in *Lee I*, the only two provocateurs were Lee and his deceased co-perpetrator Choi.  There is no indication in that opinion that the other surviving perpetrator, Woo, committed any provocative act.  After Senate Bill No. 775, however, "the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing."  (*Flores*, *supra*, 76 Cal.App.5th at p. 988; § 1172.6, subd. (d)(3) [limiting reliance on prior appellate opinions to "the procedural history of the case"].)  By logical extension, the factual summary also may not be used to determine a petitioner's eligibility at the prima facie stage.  (See *Flores*, at p. 988 ["If [the factual summary in an appellate opinion] may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage"].)

We further acknowledge that, in addition to *Lee II*, several courts, including this division, have held that defendants convicted of provocative act murder were ineligible as a matter of law for resentencing under former section 1170.95 or section 1172.6.  (*People v. Antonelli* (2023) 93 Cal.App.5th 712, 715 (*Antonelli*); *People v. Mancilla* (2021) 67 Cal.App.5th 854, 859 (*Mancilla*); *People v. Johnson* (2020) 57 Cal.App.5th 257, 271 (*Johnson*); *People v. Swanson* (2020) 57 Cal.App.5th 604, 608 (*Swanson*).)

We note that all but one of those cases were decided before Senate Bill No. 775 expanded relief under then section 1170.95 beyond those convicted of felony murder or murder under the natural and probable consequences doctrine.  Thus, to the extent

25

those pre-Senate Bill No. 775 holdings were based on the fact that a defendant convicted of provocative act murder had not been convicted under felony murder or natural or probable consequences theories, those cases, like *Lee II*, were correctly decided.

To the extent those opinions suggest that a jury convicting a defendant of provocative act murder has *necessarily* found that the defendant personally harbored a mental state of malice, we disagree as to convictions predating *Concha*.[7]  The opinions relied on *Gonzalez*, *Concha*, and/or *Mejia* for the proposition that provocative act murder requires proof that the defendant personally harbored a mental state of malice.  (*Antonelli*, *supra*, 93 Cal.App.5th at p. 720; *Mancilla*, *supra*, 67 Cal.App.5th at p. 866; *Johnson*, *supra*, 57 Cal.App.5th at p. 271; *Swanson*, *supra*, 57 Cal.App.5th at p. 613.)  The cases do not address the earlier case law imputing malice to nonprovocateurs based on the malicious acts of their confederates, or discuss how the law has shifted after *Concha*.  Those cases therefore provide no basis to question our analysis of pre-*Concha* case law.

The Attorney General in his supplemental brief concedes that "[a]t the time of [Lee's] conviction in 1994, the case law on provocative act murder did not clearly require that nonprovocateur accomplices in a provocative act murder personally harbor the mental state of malice as long as any of the accomplices (i.e., the provocateur) acted with express or implied malice."  The Attorney General nonetheless argues defendants convicted of provocative act murder fall outside the ambit of

---

[7] We express no opinion whether a defendant convicted of provocative act murder post-*Concha* is categorically barred from relief under section 1172.6, an issue that is not before us.

section 1172.6, which requires that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019," that is, changes to the Penal Code enacted through Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).) The Attorney General contends it was *Concha* and its progeny that changed the mental state requirement of provocative act murder, not Senate Bill No. 1437, and therefore section 1172.6 does not apply. In support, the Attorney General cites *Antonelli*, which reached a similar conclusion, stating, "Before the amendment [under Senate Bill No. 1437], the law of provocative act murder required that the defendant personally harbor malice. (*Gonzalez, supra*, 54 Cal.4th at p. 655 . . . .) It still does." (*Antonelli, supra*, 93 Cal.App.5th at p. 721.)

The question presented by section 1172.6, subdivision (a)(3) is whether, had the amendments to Penal Code sections 188 and 189 existed *at the time of the defendant's conviction*, the defendant could have been convicted of murder or attempted murder. Section 188's bar on imputed malice based solely on participation in a crime would prohibit conviction for provocative act murder of a nonprovocateur defendant absent proof of personal malice. Provocative act murder convictions therefore fall within the criteria of section 1172.6 to the extent that before *Concha*, a provocative murder conviction could have been based on a theory of imputed malice.

To conclude otherwise would thwart the intent of section 1172.6. The Legislature has declared that imputed malice based on participation in a crime is no longer a valid basis for murder or attempted murder convictions, absent certain exceptions for felony murder. Through section 1172.6, the Legislature created

27

an avenue of relief for anyone convicted on the basis of imputed malice, even decades before section 1172.6 was enacted. To deny resentencing to individuals simply because case law in the interim also has rejected imputed malice under certain theories would be contrary to the broad relief embodied in section 1172.6.[8]

The Attorney General further argues we should stand by our holding in *Lee II* as law of the case. " 'The law of the case doctrine states that when, in deciding an appeal, an appellate court "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal . . . , and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular." ' [Citation.]" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 374, fn. 6.) "Because the rule is merely one of procedure and does not go to the jurisdiction of the court," however, "the doctrine will not be adhered to where its application will result in an unjust decision, e.g., where there has been a 'manifest misapplication of existing principles resulting in substantial injustice' [citation], or the controlling rules of law

---

[8] In a recent decision, Division One of the Fourth District Court of Appeal held that a defendant convicted under an erroneous jury instruction allowing imputation of malice was not entitled to section 1172.6 relief because he could have challenged the erroneous instruction on appeal from his conviction. (*People v. Burns* (Sept. 21, 2023, D080779) _____ Cal.App.5th _____ [2023 WL 6157410].) *Burns* is not instructive here, where Lee's jury instructions on provocative act murder were correct under the law at the time, and therefore he had no basis to challenge them on appeal.

have been altered or clarified by a decision intervening between the first and second appellate determinations." (*People v. Stanley* (1995) 10 Cal.4th 764, 787.) The doctrine also does not apply if there is a " 'significant change in circumstances' " since the earlier appellate decision. (*People v. Boyer* (2006) 38 Cal.4th 412, 441.)

Senate Bill No. 775, which expanded former section 1170.95 to include defendants convicted under any theory in which malice is imputed based on their participation in a crime, modified the controlling rules of law and constitutes a significant change in circumstances.

Before that expansion, we had no reason to analyze the history of provocative act murder beyond concluding that it required proof of malice, thus distinguishing it from felony murder and natural and probable consequences murder. After Senate Bill No. 775, we must look further to determine whether the defendant convicted of provocative act murder *personally* harbored malice, or had that malice imputed to him based on the malicious acts of his confederate. Thus, the doctrine of law of the case does not apply.[9]

---

[9] *Antonelli* relied in part on law of the case, based on its conclusion that provocative act murder always included a personal malice element and therefore was ineligible for relief even under the expanded former section 1170.95. (*Antonelli, supra*, 93 Cal.App.5th at pp. 719–720.) As we have explained, we disagree with *Antonelli* that provocative act murder has always had a personal malice requirement, and therefore we disagree that we are bound by law of the case after Senate Bill No. 775.

### 3. The prosecutor's closing argument at trial does not establish as a matter of law that Lee was convicted under a valid theory

The Attorney General argues in his supplemental brief that when Lee's jury instructions are "considered together with the prosecutor's closing argument," it is evident "that appellant himself was alleged to be a provocateur who acted with malice," and therefore that Lee was convicted under a still-valid theory.[10] As we explain, although we agree the prosecutor in closing proceeded on a theory that Lee himself committed a provocative act, we cannot conclude the jury necessarily convicted him on that basis.

#### *a.* Additional background

The prosecutor gave her closing argument before the trial court had instructed the jury on the offenses, including murder. In summarizing the anticipated instruction for provocative act murder, the prosecutor stated the jury must find "that this defendant intentionally committed a provocative life threatening act . . . deliberately performed with knowledge of its danger and with a conscious disregard for human life." Further, the jury

---

[10] We grant the Attorney General's request that we take judicial notice of the fourth volume of the reporter's transcript from the record of Lee's original appeal, which contains the prosecutor's closing argument at Lee's trial. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) As the Attorney General notes, the record in this appeal does not indicate that the resentencing court considered or relied on the closing arguments when denying Lee's resentencing petition.

must find "this defendant's provocative act was a substantial factor in the death of victim Choi."

The prosecutor then addressed whether Lee "intentionally commit[ted] a provocative life threatening act," and argued that "pulling a gun and pointing [it] at somebody" satisfied this requirement.

The prosecutor continued, "[W]as the act deliberately performed with the knowledge of the danger and with a conscious disregard for human life? . . . [I]f he intentionally pulled the gun and pointed it, you can bet your boots that he did it on purpose, it was deliberate, and that he did it and didn't care what would happen to Agustin Nolasco. [¶] . . . The question is when somebody pulls a gun, a reasonable person and points it at somebody, do you know that someone could get hurt if you do that? Yeah. That's a conscious disregard for human life. [¶] Did he do it on purpose? Yeah. Maybe it was a reflex reaction, but you know you're doing it when your hand goes up and the gun is extended."

The prosecutor asked the rhetorical question, "What did Agustin Nolasco do when this defendant and the victim [Choi] drew their guns? He reached down for his gun immediately and came back up. . . . But for this defendant pointing his gun, Agustin Nolasco wouldn't have gone for his gun."

The prosecutor emphasized to the jury that they could not consider victim Choi's actions, and "[i]f Charlie Choi was the only person that had done something [provocative], we wouldn't be talking about murder." After further argument, the prosecutor stated, "[B]ut you have to remember that there were two people pulling guns." Later, the prosecution again stated, "[B]ut for this

defendant and Charlie Choi pulling guns simultaneously, . . . [Nolasco] wouldn't have gone for his gun."

Lee's counsel in closing challenged the evidence that Lee pointed a gun at Nolasco, or that Nolasco opened fire because Lee had a gun in his hand.  Counsel also disputed that pointing a gun was in all instances an act likely to cause death, or that Lee, if he did point a gun, thought it would provoke a lethal response.

### b.    Analysis

The Attorney General contends, based on the prosecutor's closing argument, "that the sole theory of murder offered to the jury was that [Lee] must have personally committed a provocative act, and thus the jury had to find that he personally harbored malice.  A nonprovocateur theory was not offered. Therefore, the trial court properly found that appellant was ineligible for resentencing relief as a matter of law under section 1172.6."

We acknowledge that the prosecutor in closing proceeded solely on the theory that Lee personally committed a provocative act, with no suggestion that he was liable because of a provocative act committed by someone else.  The jury instructions, however, were not so limited, and permitted the jury to convict Lee based on the act of a surviving accomplice.  We do not know if, based on the evidence, the jury might have convicted Lee on this latter theory, because we do not have the full record before us.  We therefore are unwilling to conclude, based solely on the prosecution's closing argument and summary of the evidence, that the jury necessarily convicted Lee as a provocateur as opposed to a nonprovocateur accomplice.

The Attorney General cites *People v. Estrada* (2022) 77 Cal.App.5th 941 (*Estrada*) as an example of a reviewing court

32

relying in part on the prosecution's closing argument to conclude a petitioner was ineligible for relief under former section 1170.95. *Estrada* is distinguishable and does not undercut our conclusion.

The court in defendant Estrada's original trial, when giving a general instruction on aiding and abetting liability, erroneously inserted bracketed language referencing the natural and probable consequences doctrine, although the prosecutor was not proceeding on that theory. (*Estrada*, *supra*, 77 Cal.App.5th at p. 948.) On this basis, as well as statements in the prosecutor's closing argument, Estrada argued he might have been convicted under a now-invalid theory and was eligible for relief under former section 1170.95. (*Id.* at p. 946.)

Our colleagues in Division Eight rejected this argument for several reasons. First, the court noted that in Estrada's direct appeal, the court held that, based on the jury instructions, the jury necessarily found he had acted willfully and with intent to kill, a finding incompatible with the natural and probable consequences theory. (*Estrada*, *supra*, 77 Cal.App.5th at pp. 945–946.)

Second, the court in Estrada's original trial never provided the complete instructions on natural and probable consequences, only the erroneous language inserted into the general instruction on aiding and abetting liability. (*Estrada*, *supra*, 77 Cal.App.5th at p. 947.) Given other, proper instructions on direct aiding and abetting liability, as well as the holding in Estrada's direct appeal that he acted with intent to kill, the appellate court stated, "[W]e do not find that the [erroneous] language alone is sufficient to find that the jury was instructed on a natural and probable consequences theory." (*Ibid.*)

33

The appellate court also cited Supreme Court authority holding that an erroneous natural and probable consequences instruction is harmless when "the prosecutor never requested instructions identifying and describing the target offense, . . . and the prosecutor argued to the jury that the defendants intended to commit all the charged offenses, so there was no reasonable likelihood the jury misunderstood or misapplied the law." (*Estrada, supra,* 77 Cal.App.5th at p. 948, citing *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 183–184.) In Estrada's original trial, as in *Letner and Tobin,* the prosecution had not requested instructions regarding target offenses, and had argued Estrada had intent to commit all charged offenses. (*Estrada,* at p. 948.) Finally, the appellate court rejected Estrada's argument that the prosecution's closing argument implicitly urged a natural and probable consequences theory. (*Id.* at pp. 948–949.)

*Estrada* does not help the Attorney General because the Court of Appeal in that case did not rely solely on the prosecutor's closing argument to conclude Estrada had been convicted under a valid theory. First and foremost, there had been a prior judicial finding in Estrada's direct appeal that he had acted with intent to kill. Second, Estrada's jury had never been fully instructed on the natural and probable consequences doctrine, but received only an erroneous fragment, the significance of which was weakened by other, correct instructions. In addition, the prosecutor never argued the natural and probable consequences theory to the jury. The appellate court concluded "there was no reasonable likelihood the jury misunderstood or misapplied the law." (*Estrada, supra,* 77 Cal.App.5th at p. 948.)

In contrast, here the jury was fully and correctly instructed on provocative act murder according to the law at the time,

34

including that Lee could be held liable based on the mental state of a surviving accomplice. There was no prior judicial finding that the jury instructions necessarily required the jury to convict Lee based on his own provocative act, only a finding that the evidence was sufficient to support such a theory. Thus, unlike in *Estrada*, the jury instructions alone do not compel the conclusion, or indeed even suggest, that he was convicted based on his own provocative act. Given the clear and (at the time) correct instructions allowing conviction under a now-invalid theory, we cannot conclude on the limited record before us that the prosecutor's closing argument overrode those instructions.

## C.  Lee Is Not Eligible For Relief On His Attempted Murder Conviction

In his opening brief, Lee states, "It is undisputed that appellant was convicted of murder and attempted murder under the provocative act theory of culpability." Lee does not otherwise address his attempted murder conviction in his opening brief. To the extent Lee is suggesting he is entitled to relief under section 1172.6 for the attempted murder conviction because he was convicted under the provocative act theory, we disagree.

Setting aside whether there is such a thing as attempted provocative act murder, a proposition for which Lee cites no authority, the record makes clear Lee was not convicted under that theory. The procedural history as reflected in *Lee I* indicates Lee was convicted of the attempted murder of Nolasco, the security guard. Lee's jury was instructed on the following elements for that crime: "1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another

35

human being." Absent from this instruction is any language regarding a third party responding with lethal force to provocation by Lee or an accomplice, as would be required under the provocative act doctrine.

In his reply brief, Lee appears to make a new argument that he was convicted of attempted murder as an aider and abettor, and that certain instructions could have led the jury to convict him without a finding that he acted with malice. This argument is forfeited for failure to raise it in the opening brief. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.)

The argument also fails on the merits. Lee's jury was instructed, "The persons concerned in the commission of a crime who are regarded by law as principals in the crime thus committed and equally guilty thereof include: [¶] 1. Those who directly and actively commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission of the crime." The instruction then explained, "A person aids and abets the commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime."

As discussed above, the attempted murder instruction required that the perpetrator of the attempted murder "harbor[ ] express malice aforethought, namely, a specific intent to kill unlawfully another human being." Assuming arguendo the jury convicted Lee not as a direct perpetrator, but for aiding and abetting an attempted murder (for example, Choi's firing at Nolasco), the jury necessarily found Lee had "knowledge of the unlawful purpose of the perpetrator," that being "a specific intent

36

to kill unlawfully another human being," and aided and abetted "with the intent or purpose" of committing the crime.  Thus, the jury necessarily found Lee intended to aid and abet an unlawful killing, that is, that Lee had an intent to kill, the very definition of express malice.  (§ 188, subd. (a)(1).)[11]

Lee cites cases in which courts took issue with jury instructions for aiding and abetting second degree implied malice murder and first degree lying-in-wait murder, holding those instructions potentially permitted juries to convict aiders and abettors without a finding of malice.  (*People v. Langi* (2022) 73 Cal.App.5th 972, 982–983; *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1266.)  Lee does not explain how the jury instructions in his case are analogous to those in *Langi* and *Maldonado* such that those decisions are instructive.  We note in *Langi* and *Maldonado*, the concern centered on the fact that the direct perpetrator of an implied malice murder or lying-in-wait murder need not harbor an intent to kill.  (*Langi*, at p. 982; *Maldonado*, at p. 1266.)  That concern is not present under the instructions given in Lee's case, which required the perpetrator of the attempted murder to "harbor[ ] express malice aforethought, namely, a specific intent to kill . . . ."

---

[11]  The jury's finding that Lee had intent to kill as to the attempted murder does not necessarily mean the jury found he harbored malice as to the provocative act murder.  The attempted murder could have taken place after Nolasco shot Choi, for example if Lee fired at Nolasco as Lee and Woo fled, as described in *Lee I*.

## DISPOSITION

The order denying Kenny Inkwon Lee's petition under Penal Code former section 1170.95 is affirmed as to the conviction for attempted murder and reversed as to the conviction for murder. The matter is remanded, and the resentencing court is directed to issue an order to show cause under subdivision (c) of Penal Code section 1172.6 as to the murder conviction. The resentencing court shall then hold an evidentiary hearing under Penal Code section 1172.6, subdivisions (d)(1) and (3), unless the parties waive the hearing and stipulate to Lee's eligibility for resentencing (*id.*, subd. (d)(2)).

CERTIFIED FOR PUBLICATION.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.