[No. F028529. Fifth Dist. Feb. 16, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
CUSTODIO GARCIA, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, and IV.

## COUNSEL

Rex Williams and Melissa Nappan, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Roger E. Venturi and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VARTABEDIAN, Acting P. J.**—Custodio Garcia, defendant, was one of four perpetrators involved in a home invasion. Two of his accomplices were shot and killed by the victim of the home invasion. Defendant submitted his case to the trial court based on the preliminary hearing transcript. The trial court found defendant guilty of conspiracy to commit robbery, burglary, and murder. Pursuant to a prior stipulation between the parties, the murder was reduced to involuntary manslaughter. Defendant appeals, claiming he was improperly convicted of the provocative act murder of his accomplice because: (1) there was no provocative act, (2) his guilt cannot be based on the provocative act of a deceased accomplice, even though that accomplice is not the one alleged in the information as the murder victim, and (3) the murder victim himself committed a provocative act which was the sole cause of his death, thus absolving defendant of legal culpability. In addition, defendant claims the evidence is insufficient to support his other convictions and the trial court erred in imposing the upper term for the burglary conviction. We affirm.

### FACTS AND PROCEEDINGS

Defendant, Adrian Alvarez, Nemecio Quezada, and one other individual went to the apartment of Narcisio Pena at approximately 4:00 a.m. Pena was asleep in one of the two upstairs bedrooms with his girlfriend when the four men broke down the front door with a sledgehammer. All four men went upstairs. Pena heard a loud noise and heard footsteps running up the stairs. He grabbed his .38-caliber pistol. Pena opened the bedroom door slightly to see what was going on, and he saw three or four men in the upstairs hallway of his apartment. Pena tried to close the bedroom door; the men rushed the door and tried to push it open. While Pena was attempting to close the door, someone fired a round into the bedroom. Pena saw the muzzle flash and heard the shot. Pena fired several rounds back and managed to shut the door.

Pena heard some noise and opened the door again. He saw an individual run out of the other upstairs bedroom, across the hall, and toward the stairs. This individual pointed a gun at Pena. Pena fired again. Pena shut the bedroom door and his girlfriend called 911.

Police arrived. The body of Quezada was outside of Pena's apartment. A .40-caliber Smith & Wesson gun was found next to his body. The doorjamb of Pena's front door had been broken away. A sledgehammer, not belonging to Pena, was downstairs on the kitchen floor, wrapped in a towel. The body of Alvarez was found at the foot of the stairs. A nine-millimeter handgun was next to his body. The gun was loaded with a live round in the chamber.

A .40-caliber bullet was found in the ceiling above the bed in Pena's bedroom. The bullet had been fired somewhere from a zero- to 45-degree angle. Five .38-caliber casings were found in the apartment—four upstairs and one downstairs. One .40-caliber casing was found downstairs. No 9-millimeter casings were found. Several unidentifiable bullet fragments were found in the apartment.

Quezada and Alvarez were each killed by a single gunshot wound. The bullets retrieved from their bodies were .38-caliber bullets. Quezada had a significant amount of methamphetamine in his body when he died.

Officers found approximately $2,000 in five locations in Pena's bedroom. In addition, a car parked outside Pena's apartment, belonging to Pena, had been modified by placing a hidden compartment in the backseat.

Following the preliminary hearing, defendant was held to answer on charges of murder of Alvarez, conspiracy to commit robbery, and burglary. In addition, it was alleged as to all counts that defendant was armed with a firearm.

Defendant filed a Penal Code section 995 motion to dismiss, claiming he could not be found guilty of murder based on the provocative act theory of murder. The motion was denied. Defendant sought writ review in this court in *Garcia* v. *Superior Court* (Dec. 30, 1996) F027395 (nonpub. opn.). His petition was denied. Defendant's case was set for trial. The People filed a petition for writ of mandate in this court, challenging a portion of the jury instruction the court had determined it was going to give. This court, by written opinion, issued the peremptory writ of mandate requiring a modification of the trial court's intended jury instruction regarding the provocative act theory of murder. (*People* v. *Superior Court* (*Garcia*) (Mar. 19, 1997) F027797 [nonpub. opn.].) We grant the motions of both parties that we take judicial notice of our previous opinion in No. F027797. (Evid. Code, §§ 452 & 453.)

After the case was returned to superior court, the parties agreed that defendant would submit the case to a trial before the court utilizing the preliminary hearing transcript. It was further stipulated that if the court found defendant guilty of all counts and enhancements, the murder count would, in the interests of justice, be reduced to involuntary manslaughter and defendant would receive a maximum sentence of seven years in prison. It was also agreed that defendant could challenge the application of the provocative act theory of murder on appeal.

The court found all counts to be true beyond a reasonable doubt. The trial court sentenced defendant to the upper term of six years for the burglary,

plus one year for the arming allegation. The conspiracy to commit robbery sentence was stayed and the involuntary manslaughter sentence was ordered to run concurrently. Defendant filed a timely notice of appeal.

DISCUSSION

I.

(a)  *Was there a provocative act?*

■  The *"Washington-Gilbert"*[1] or provocative act theory of murder is invoked when a victim or police officer has killed a felon.[2] To qualify as a provocative act under the provocative act theory of murder, the conduct of the felon must be sufficiently provocative of lethal response to support a finding of implied malice. (*Taylor v. Superior Court* (1970) 3 Cal.3d 578, 583 [91 Cal.Rptr. 275, 477 P.2d 131].) "[M]ere participation in an armed robbery is not sufficient to invoke murder liability, direct or vicarious, when the victim resists and kills." (*In re Joe R.* (1980) 27 Cal.3d 496, 504 [165 Cal.Rptr. 837, 612 P.2d 927].) The life-threatening acts must be other than those implicit in the crime of armed robbery. (*Id.* at p. 503.)[3]

■  Defendant claims that Quezada's act of discharging a handgun into the ceiling was not life threatening. He argues that Quezada's act was inherent in the underlying crime and was not beyond that necessary to commit the robbery. Therefore, defendant contends, there was no provocative act to support the provocative act theory of murder.

It has been repeatedly noted that "a person who initiates a gun battle in the course of committing a felony intentionally and with a conscious disregard for life commits an act that is likely to cause death." (*People v. Antick* (1975) 15 Cal.3d 79, 91 [123 Cal.Rptr. 475, 539 P.2d 43].) "[A] gun battle can be initiated by acts of provocation falling short of firing the first shot." (*Taylor*

---

[1]*People v. Washington* (1965) 62 Cal.2d 777 [44 Cal.Rptr. 442, 402 P.2d 130]; *People v. Gilbert* (1965) 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365] (judgment vacated on other grounds *Gilbert v. California* (1967) 388 U.S. 263 [87 S.Ct. 1951, 18 L.Ed.2d 1178]).

[2]Liability is not based on a felony-murder theory because "[w]hen a killing is not committed by a robber [felon] or by his accomplice but by his victim, malice aforethought is not attributable to the robber, for the killing is not committed by him in the perpetration or attempt to perpetrate robbery." (*People v. Washington, supra,* 62 Cal.2d at p. 781.) Murder liability in such cases is based upon proof of malice and vicarious liability. (*People v. White* (1995) 35 Cal.App.4th 758, 764 [41 Cal.Rptr.2d 510].)

[3]It is not required that the provocative act be independent of the felony when the underlying felony is attempted murder. The rule that the act must be other than that implicit in the crime applies only where the felony does not inherently involve an intent to kill. (*People v. Gallegos* (1997) 54 Cal.App.4th 453, 460 [63 Cal.Rptr.2d 382].)

v. *Superior Court, supra,* 3 Cal.3d at p. 584.) Circumstances " 'fraught with grave and inherent danger to human life' " are sufficient to raise an inference of malice. (*Ibid.*)

Here, Quezada fired a gun into an occupied bedroom. Although the bullet ended up in the ceiling, this does not diminish the gravity of the act. First, the fact that the bullet wound up in the ceiling does not necessarily prove that this was where the gun was intentionally aimed. During the struggle at the door the gun may have been jostled, causing it to be fired in a direction other than where it was intended. Also, the evidence shows the bullet likely entered the ceiling at an angle; thus, the fact that it ended up in the ceiling does not mean that before it entered the ceiling it did not travel through a part of the room where it could endanger human life. Furthermore, Pena probably was not aware that the bullet was headed toward the ceiling and merely knew that the room he was occupying with his girlfriend had been fired upon. The gun battle was initiated when Quezada fired his .40-caliber gun into the room occupied by Pena and his girlfriend. This act was not inherent in armed robbery and was an act done with a conscious disregard for life. There was substantial evidence of a provocative act.

(b) *Can defendant's conviction be based on the provocative act of a deceased accomplice who is not the alleged murder victim?*

■ Defendant cites the general rule that the provocative conduct of a criminal actor who is killed by the victim cannot form the basis for a murder for which his accomplices can be held responsible. And defendant asserts that if Quezada's act was a provocative act, any provocative act he committed is irrelevant because he died.

In *People* v. *Antick, supra,* 15 Cal.3d 79, the defendant and his accomplice, Bose, burglarized a home. Later, officers approached a car suspected to have been used in the burglary. Bose was seated in the driver's seat. The defendant was not in the car; he was nearby outside a house. Bose was ordered out of the car and the officer saw a revolver on the seat of the car. The officer drew his gun and ordered Bose to put his hands on the hood of the car; the defendant approached the car. Bose pulled a second gun from his waist area and fired at the officer. The officer fired at Bose. Bose ran. Another officer ordered Bose to stop. When he did not, the second officer fired, killing Bose. The defendant was convicted of the murder of Bose.

The Supreme Court reversed the defendant's murder conviction. Although Bose's conduct in initiating the gun battle may have established the requisite malice, Bose's conduct (provocative act) did not result in the unlawful

killing of another human being, but resulted in Bose's death. Because Bose could not be guilty of murder in connection with his own death, ". . . it is impossible to base defendant's liability for this offense upon his vicarious responsibility for the crime of his accomplice." (*People* v. *Antick, supra,* 15 Cal.3d at p. 91.) The defendant was not guilty of murder because he "was convicted of murder based upon his vicarious liability for the acts of an accomplice who could not himself have been found guilty of that offense." (*Id.* at p. 92.)

It is from this holding in *Antick* the courts have stated repeatedly that to prove the provocative act theory it must be shown that the defendant or a surviving accomplice committed a life-threatening act beyond that necessary to commit the robbery. (*People* v. *White, supra,* 35 Cal.App.4th at p. 764.) Although this component refers to a surviving accomplice, this reference is meant to exclude liability when the deceased provocateur accomplice is the sole cause of his death and is the accomplice whom defendant is charged with murdering.

Here, although Quezada is deceased, defendant is not charged with Quezada's death; he is charged with Alvarez's death. Quezada's act resulted in the unlawful killing of another human being, Alvarez. Because Quezada, if he had survived, could have been found guilty of the murder of another human being, Alvarez, defendant's liability is based upon defendant's vicarious responsibility for the crime of his accomplice, Quezada. The circumstance that Quezada also died should not reduce defendant's criminal responsibility.[4] Thus, the surviving accomplice phrase, so often repeated, is meant to exclude a defendant from being charged with the murder of a sole provocateur; it was not formulated to preclude liability when a provocateur-accomplice does an act that results in the unlawful killing of *another* human being. "It is only in cases like *Antick,* where the defendant's responsibility for murder is based on his vicarious liability for the acts of an accomplice *who could not himself have been guilty of the offense* that liability will not lie." (*People* v. *Superior Court (Shamis)* (1998) 58 Cal.App.4th 833, 845 [68 Cal.Rptr.2d 388].)

(c)  *Was the provocative act of the murder victim the sole cause of his death?*

██   Defendant's final argument regarding the provocative act theory is that Pena shot at Alvarez in response to Alvarez's aiming of a gun at Pena.

---

[4]At trial, defendant argued he could not be charged under the provocative act theory of murder because he did not engage in any provocative acts. Defendant has not raised this issue on appeal. Furthermore, *Taylor* v. *Superior Court* found that a nonprovocateur defendant could be charged with murder under the provocative act theory based on vicarious responsibility. (*Taylor* v. *Superior Court, supra,* 3 Cal.3d at p. 583.)

Thus, contends defendant, Alvarez was the sole cause of his own death. The argument follows that under the law of *Antick*, because Alvarez cannot be criminally liable for his own death, defendant cannot be liable under a theory of vicarious responsibility.

In the previous writ petition before this court (*People v. Superior Court (Garcia)*, *supra*, F027797), the People claimed that the proposed instruction by the trial court was erroneous. This instruction provided in part: "In order to prove this crime [of murder], each of the following elements must be proved: [¶] . . . [¶] 5. The victim Adrian Ledesma Alvarez did not commit a provocative act which was a cause of his own death."

We held the instruction was erroneous. Our discussion was as follows:

"In *People v. Caldwell* (1984) 36 [Cal.]3d 210 [203 Cal.Rptr. 433, 681 P.2d 274], the deceased and his two accomplices all committed provocative acts which thereafter led to the killing of the deceased perpetrator by police. *Caldwell* held that the two accomplices could be vicariously liable for the deceased's death even though the deceased's provocative acts contributed in part to his own death. Thus, the fact that the decedent's [*sic*] provocative act was a partial cause of his own death would not bar the accomplices' liability for murder if their provocative acts were a 'substantial factor' which contributed to the ultimate result. (*Caldwell, id.* at pp. 219-220)

"From *Caldwell*, it follows that the element 5 of the modified instruction challenged by petitioner is erroneous insofar as it precludes criminal liability if the deceased's provocative act was only a partial cause of his own death." (*People v. Superior Court (Garcia)*, *supra*, F027797.)

Defendant is relieved from liability for the death of Alvarez only if Alvarez's actions were the sole cause of his own death. From the facts here, the trial court was entitled to believe that Quezada's provocative act set the gun battle into motion and that Alvarez's pointing of the gun at Pena was merely a part of the chain reaction that led to Alvarez's death. (See *People v. Mai* (1994) 22 Cal.App.4th 117, 128-129 [27 Cal.Rptr.2d 141].) There is nothing in the evidence demonstrating a significant lull in the action which might have caused Pena to no longer be reacting to the gun battle initiated by Quezada.

Thus, Alvarez's pointing of the gun at Pena was not the sole cause of Alvarez's death. Defendant was properly convicted of the death of Alvarez because defendant was an accomplice to Quezada, one of the provocateurs.

## II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Thaxter, J., and Wiseman, J., concurred.

---

*See footnote, *ante*, page 1324.