# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

Plaintiff and Respondent,

v.

TIMOTHY PATRIC ANTONELLI,

Defendant and Appellant.

S281599

Second Appellate District, Division Six

B321947

Ventura County Superior Court

CR27515-2

April 24, 2025

Justice Groban authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Jenkins, and Evans concurred.

PEOPLE v. ANTONELLI

S281599

Opinion of the Court by Groban, J.

In 1991, a jury convicted defendant Timothy Patric Antonelli of first degree murder under the provocative act doctrine based on his role in a home invasion robbery during which one of his accomplices was killed by a victim. In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437),[1] which, as amended in 2021 by Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), makes eligible for resentencing persons convicted of murder pursuant to a "theory under which malice is imputed to a person based solely on that person's participation in a crime." (Pen. Code, § 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2.)[2] Defendant sought relief pursuant to the statute, arguing that he was convicted of murder under " 'a provocative act theory whereby malice was imputed to [him] based on his participation in the robbery.' " (*People v. Antonelli* (2023) 93 Cal.App.5th 712, 718 (*Antonelli*).) The trial court summarily denied the petition. Defendant appealed and the Court of Appeal below affirmed, holding that defendant was categorically ineligible for relief under section 1172.6 as a matter of law because the provocative

---

[1] Statutes 2018, chapter 1015, section 4 (see fn. 5, *post*, regarding the renumbering of former § 1170.95 as § 1172.6 in 2022).

[2] All undesignated statutory references are to the Penal Code.

1

act murder doctrine "requires that the defendant personally harbor malice" (*Antonelli*, at p. 721), i.e., he was not convicted under a theory by which malice could be imputed to him. Based on this threshold conclusion, the Court of Appeal found the jury instructions given at defendant's trial to be irrelevant. (*Ibid.*)

Subsequently, the Court of Appeal in *People v. Lee* (2023) 95 Cal.App.5th 1164 (*Lee*) "disagree[d] with *Antonelli* that provocative act murder has always had a personal malice requirement." (*Id.* at p. 1186, fn. 9.) Specifically, *Lee* held that it was not until 2009 that our decision in *People v. Concha* (2009) 47 Cal.4th 653 (*Concha*) clearly articulated that a defendant had to personally harbor malice to be convicted of provocative act murder. According to *Lee*, individuals with pre-*Concha* provocative act murder convictions, like defendant here and the *Lee* defendant, are therefore not categorically barred from seeking relief under section 1172.6. (*Lee*, at pp. 1184–1185.) In consultation with the record of conviction, including the jury instructions, the *Lee* court determined the defendant made a prima facie case for relief from his murder conviction and was entitled to an evidentiary hearing under section 1172.6, subdivision (d). (*Lee*, at pp. 1190, 1191–1192.)

We granted review to resolve this conflict concerning provocative act murder convictions occurring before 2009, as well as the necessity of considering jury instructions when a defendant petitions for resentencing under section 1172.6.[3] The

---

[3] The *Lee* court "express[ed] no opinion whether a defendant convicted of provocative act murder post-*Concha* is categorically barred from relief under section 1172.6, an issue that is not before us." (*Lee, supra*, 95 Cal.App.5th at p. 1184, fn. 7.) We

parties agree, as do we, that "malice was not necessarily required on the part of the non-provocateur accomplice under the provocative act murder doctrine" at the time of defendant's conviction and that the jury instructions in any given case will generally inform the prima facie inquiry under section 1172.6. We therefore agree with the parties that *Lee* has the better view.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Trial Proceedings

Early in the morning of January 1, 1991, defendant was invited to a party in Ojai.  Defendant, along with Frank Stoddard and Ron Brown, devised a plan to rob the partygoers. Brown and Stoddard armed themselves with guns.

Upon arriving at the party, Stoddard and Brown burst through the doorway with their guns drawn.  They yelled at everyone to get on the floor and demanded their valuables. Defendant threw one of the party hosts onto a couch and got down next to her.  Stoddard ordered one party guest to give him his valuables, but when it became apparent the guest had nothing, Stoddard threatened to kill him and repeatedly kicked him in the head.  Another party guest handed over his wallet to Stoddard, but it only had five dollars in it, so Stoddard hit him in the head with his gun until the guest fell unconscious. Growing angrier, Stoddard threatened to "blow [the] brains out" of the party host who was next to defendant and pulled her into the kitchen by her hair.  Defendant left the residence at some point.  Eventually, a violent struggle between Stoddard and

---

likewise do not weigh in on this distinct question, which is not raised by the record here.

Brown and some of the partygoers ensued, during which one partygoer gained control of Brown's gun and fatally shot him.[4]

A jury thereafter convicted defendant of, inter alia, Brown's first degree murder (§ 187, subd. (a)) under the provocative act doctrine. The trial court sentenced defendant to 25 years to life for the murder and ordered his remaining terms to be served concurrently. On direct appeal, the Court of Appeal affirmed defendant's judgment of conviction with minor sentence modifications not affecting the murder count.

## B. Senate Bills 1437 and 775

Seventeen years after defendant's murder conviction, the Legislature, in Senate Bill 1437, "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) Senate Bill 1437 also added section 1170.95, now section 1172.6,[5] to provide "a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, at p. 957.) Thereafter, Senate Bill 775 amended section 1172.6

---

[4] The summary of facts is drawn from the Court of Appeal's opinion below, as well as the unpublished opinion in defendant's direct appeal. We rely on these factual descriptions solely for the purpose of summarizing the background of this case. We observe that their factual descriptions differ in some respects. (See *Antonelli*, *supra*, 93 Cal.App.5th at pp. 715–717; *People v. Antonelli and Stoddard* (Sept. 28, 1993, B059426) [nonpub. opn.].)

[5] Effective June 30, 2022, Assembly Bill No. 200 (Reg. Sess. 2021–2022) renumbered section 1170.95 as section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) Unless otherwise noted to provide clarity, we refer simply to section 1172.6.

to, inter alia, expand eligibility for resentencing to persons convicted of murder pursuant to a "theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2.)

As we have detailed in prior opinions, the section 1172.6 petitioning "process begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A)), including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 . . . .'" (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*); see also *People v. Curiel* (2023) 15 Cal.5th 433, 450 (*Curiel*) [quoting *Strong*'s description of the § 1172.6 resentencing process].) Upon receiving a complying petition, and after affording the parties an opportunity to submit briefing, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong*, at p. 708.)

## C. Defendant's Resentencing Proceedings and *People v. Lee*

In 2019, after the passage of Senate Bill 1437 but before the passage of Senate Bill 775, defendant filed his first petition for resentencing under section 1172.6. After issuing an order to show cause and holding an evidentiary hearing, the superior

court denied the petition. In a written ruling after the evidentiary hearing, the superior court concluded that defendant was ineligible for relief because "the People have proven beyond a reasonable doubt that Petitioner is guilty of murder under the new law, under the theory that the defendant was 'a major participant' and 'acted with reckless indifference to human life.' "

Defendant appealed and the Court of Appeal affirmed, offering alternative bases for doing so. First, as a threshold matter, a majority of the Court of Appeal concluded that defendant was ineligible for relief under former section 1170.95 because he was convicted of provocative murder and not pursuant to the felony-murder rule or the natural and probable consequences doctrine. The Court of Appeal reasoned that "S[enate] [Bill] 1437 does not use the phrase 'provocative act murder' " and "we do not add language and/or unarticulated theories to a statu[t]e." (*People v. Antonelli* (Dec. 1, 2020, B299749) [nonpub. opn.]; see former § 1170.95, subd. (a).) Second, the Court of Appeal held that even if defendant were eligible for relief under former section 1170.95, substantial evidence supported the trial court's finding that he was not entitled to resentencing because "petitioner was a major participant in a home invasion robbery who acted with reckless indifference to human life." (*People v. Antonelli, supra*, B299749, citing § 189, subd. (e)(3), added by Stats. 2018, ch. 1015, § 3 ; see also *People v. Antonelli, supra*, B299749.) Justice Tangeman concurred in the result but questioned the majority's conclusion that defendant was ineligible for relief under former section 1170.95 because the statute does not apply to persons convicted of provocative act murder. (*People v. Antonelli, supra*, B299749 (conc. opn. of Tangeman, J.).) Justice Tangeman

nonetheless concurred in the result because, as the majority also concluded, the evidence supported the trial court's finding that defendant could be convicted of murder under current law as "a major participant in the underlying felony who acted with reckless indifference to human life . . . ." (*People v. Antonelli, supra,* B299749 (conc. opn. of Tangeman, J.).)

In 2022, after the passage of Senate Bill 775 expanded section 1172.6 to apply to individuals not only convicted of felony murder and murder under the natural and probable consequences theory, but to those convicted under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2), defendant filed a second petition for resentencing. He argued that Senate Bill 775's "amendment to [section 1172.6] encompasses provocative act murder where malice is imputed to the defendant based upon a co-defendant's commission of a provocative act." The People opposed the petition, explaining that even if Senate Bill 775 now made clear that those convicted of provocative act murder may petition for relief, defendant would still not be entitled to relief because the trial court had already ruled that "the People had proved beyond a reasonable doubt that the petitioner was guilty of murder under the newly enacted Senate Bill 1437 . . . . Specifically, [the judge] held that the petitioner was a major participant and acted with reckless indifference to human life." Defendant responded that Senate Bill 775 represented a relevant change in law since his first petition was denied, entitling him to file a second petition for resentencing. Furthermore, defendant asserted that the instructions given to his jury and the prosecutor's argument permitted jurors to impute malice to him even though he did not commit the

provocative act and the court should therefore issue an order to show cause.

At the hearing on the second petition, the prosecutor argued that defendant essentially "wants a redo because he didn't like [the prior] holding, but there's nothing in [the judge's prior] holdings that's going to change. [¶] [. . .] [¶] [. . .] I think the Court can make that ruling at the prima facie stage because Mr. Antonelli had his hearing already . . . ." The trial court agreed with the People and denied defendant's request for a second order to show cause. Defendant appealed.

The parties' briefing before the Court of Appeal focused on the basis for the trial court's ruling described above, i.e., whether the finding on defendant's first petition that he was guilty of murder under the law as amended by Senate Bill 1437 procedurally barred him from seeking resentencing in a second petition. However, the Court of Appeal affirmed the trial court's denial order on a different ground and it is that determination that gives rise to the conflict we must now resolve: the Court of Appeal concluded that Senate Bill 775 did not expand eligibility for relief to provocative act murderers because a provocative act murderer cannot be convicted based on imputed malice. (See *Antonelli*, *supra*, 93 Cal.App.5th at p. 720.) Quoting our 2012 decision in *People v. Gonzalez* (2012) 54 Cal.4th 643, 655 (*Gonzalez*), the Court of Appeal explained, " 'A murder conviction under the provocative act doctrine . . . requires proof that the defendant *personally harbored* the mental state of malice, and either the defendant or an accomplice intentionally committed a provocative act that proximately caused an unlawful killing.' " (*Antonelli*, at p. 720.) The Court of Appeal therefore deemed it unnecessary to look at the specific jury instructions in defendant's case because he was rendered

8

ineligible for section 1172.6 relief as a matter of law by virtue of his provocative act murder conviction. (*Antonelli*, at p. 721.)

The court in *Lee*, *supra*, 95 Cal.App.5th 1164 subsequently disagreed with this Court of Appeal's conclusion that a provocative act murder conviction "*has always*" required proof that the defendant personally harbored malice. (*Id.* at p. 1186, fn. 9, italics added.) Rather, upon its review of "case law developing the provocative act doctrine," such a requirement was not made clear until this court's 2009 decision in *Concha*, *supra*, 47 Cal.4th 653. (*Lee*, at p. 1175.) Until then, "an accomplice could be convicted so long as his confederate committed a malicious and provocative act, regardless of the defendant's personal mental state." (*Ibid.*) The instructions given to Lee's jury, which did not require jurors to find that Lee personally acted with malice, confirmed "[t]his was the law in effect at the time of Lee's conviction in 1994." (*Id.* at p. 1183.) In view of "the clear and (at the time) correct instructions allowing conviction under a now-invalid theory," the *Lee* court could not "conclude on the limited record before [it] that the prosecutor's closing argument overrode those instructions." (*Id.* at p. 1190.) The *Lee* court therefore reversed the trial court's summary denial of Lee's petition for resentencing and directed the trial court to issue an order to show cause as to his murder conviction. (*Id.* at p. 1191.)

We granted defendant's petition for review to resolve this conflict between the Court of Appeal below and *Lee*. As described more fully below, *Lee* has the better view.

## II.   DISCUSSION

### A. Defendant Is Not Categorically Ineligible for Relief Under Section 1172.6

In *People v. Washington* (1965) 62 Cal.2d 777 (*Washington*), we acknowledged that the felony-murder rule cannot be used to impose murder liability on a felon when, like here, a killing is committed by the crime victim or a police officer in an effort to *thwart* the commission of a listed felony. (*Id.* at p. 781.) "Section 189 requires that the felon or his accomplice commit the killing, for if he does not, the killing is not *committed to perpetrate the felony*." (*Ibid.,* italics added.) However, "[w]hen someone other than the defendant or an accomplice kills during the commission or attempted commission of a crime, the defendant . . . may nevertheless be prosecuted for murder under the *provocative act* doctrine." (*Gonzalez, supra*, 54 Cal.4th at p. 654.) " 'A provocative act murder case necessarily involves at least three people — . . . the perpetrator of the underlying offense, an accomplice, and a victim of their crime.' " (*Ibid.*, quoting *People v. Briscoe* (2001) 92 Cal.App.4th 568, 581; but see *People v. Antick* (1975) 15 Cal.3d 79, 91 (*Antick*) [clarifying that when the deceased himself is the sole provocateur, his nonprovocateur accomplice cannot be liable for murder because the provocateur did not cause the death of another but only his own death].)

Until *Concha, supra*, 47 Cal.4th 653, our decisions allowed for conviction for provocative act murder whereby malice could be imputed to a nonprovocateur accomplice solely based on his or her participation in a crime. (See *Lee, supra*, 95 Cal.App.5th at p. 1179.) More specifically, over 50 years ago, the provocative act doctrine was originally explained as follows, "When the defendant *or his accomplice*, with a conscious disregard for life,

intentionally commits an act that is likely to cause death [the "provocative act"], and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder.  In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant *or his accomplice* committed with conscious disregard for life."  (*People v. Gilbert* (1965) 63 Cal.2d 690, 704, italics added (*Gilbert*).)  Thereafter, we repeatedly confirmed that the provocative act doctrine is a theory of *vicarious liability* for murder; an accomplice to a felony could "be vicariously responsible for any killing [except where the decedent is the sole provocateur] attributable to the intentional acts of his associates committed with conscious disregard for life, and likely to result in death."  (*Taylor v. Superior Court* (1970) 3 Cal.3d 578, 583 (*Taylor*); see also *People v. Caldwell* (1984) 36 Cal.3d 210, 223 ["The proper focus on the individual culpability of accomplices is retained by the requirement that *one or more of them* engage in conduct which it is *highly probable* (not merely foreseeable) will result in death, evincing a *conscious disregard* of human life"], first italics added.)  The requisite provocative act only had to be committed by a surviving accomplice "in furtherance of the common design of all," as in a criminal conspiracy, to hold a nonprovocateur accomplice "vicariously liable for the murder." (*Antick*, *supra*, 15 Cal.3d at p. 89; see also *Pizano v. Superior Court* (1978) 21 Cal.3d 128, 139 [a coconspirator in a robbery "may be found guilty of murder for a killing attributable to the act of his accomplice if the act was committed *in furtherance of the common design*" (italics added)].)

Courts of Appeal necessarily adhered to our articulation of the law.  (See *Lee*, *supra*, 95 Cal.App.5th at p. 1180, quoting *People v. Mai* (1994) 22 Cal.App.4th 117, 125 [relying on our

precedent to conclude that " 'it is a life-endangering act by a defendant *or surviving cofelon* that supplies the requisite implied malice to support a murder conviction' "]; *People v. Garcia* (1999) 69 Cal.App.4th 1324, 1331 [holding, under our precedent, that the nonprovocateur defendant was properly convicted of provocative act murder "based upon defendant's vicarious responsibility for *the crime of his accomplice*" (italics added)].) The parties agree that, under the governing law at the time of defendant's murder conviction in 1991, the provocative act murder doctrine did not require proof that defendant personally harbored malice. In other words, "[t]he defendant could be a non-provocateur who did not personally act with malice, so long as a provocateur accomplice did."

As the *Lee* court explains, it was not until our November 2009 decision in *Concha, supra,* 47 Cal.4th 653 that we "separated out the mens rea of individual defendants in provocative act murder cases" and made clear that a defendant must personally harbor malice to be convicted of provocative act murder. (*Lee, supra,* 95 Cal.App.5th at p. 1182.) The Attorney General only lightly pushes back on the proposition that our 2009 decision in *Concha* represents the relevant turning point in our decisional law. The Attorney General acknowledges that "any doubt" about the requisite mens rea for nonprovocateur accomplices was necessarily resolved "in 2009 with *Concha,*" but suggests that we made statements as early as 2001 to clarify the law in this regard. In doing so, the Attorney General points to our statement in *People v. McCoy* (2001) 25 Cal.4th 1111 (*McCoy*) that "outside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator." (*Id.* at p. 1118.) The Attorney General also quotes the following language from a

12

footnote in *People v. Cervantes* (2001) 26 Cal.4th 860 (*Cervantes*): "If the defendant proximately causes a homicide through the acts of an intermediary and does so with malice and premeditation, his crime will be murder in the first degree . . . [but i]f the defendant proximately causes a homicide through the acts of an intermediary and does so without malice, his crime will be manslaughter." (*Id*. at p. 872, fn. 15, citations omitted.)

*Concha* clearly relies on these precedents in concluding a nonprovocateur accomplice must personally harbor malice to be liable for murder. (See *Concha, supra,* 47 Cal.4th at p. 660, citing *McCoy, supra,* 25 Cal.4th at p. 1118; *Concha,* at p. 662, citing *McCoy* at pp. 1118–1119; *Concha,* at p. 663, quoting *Cervantes, supra,* 26 Cal.4th at p. 872, fn. 15.) However, while *McCoy* and *Cervantes* represent important building blocks in the evolution of our decisional law, a close reading of those cases discloses that, unlike *Concha,* they did not specifically clarify the requisite mens rea that a nonprovocateur accomplice must harbor in order to be convicted of provocative act murder. Critically, *McCoy* was not a provocative act murder case. In *McCoy,* we instead examined "the nature of aiding and abetting liability" in general (*McCoy,* at p. 1116), not tailored to the specific "type of murder" that provocative act murder represents (*Concha, supra,* 47 Cal.4th at p. 663). Although *Cervantes* did consider a provocative act murder, in that case we focused on the proximate cause element — not the malice element. (*Cervantes, supra,* 26 Cal.4th at p. 866 ["In particular, the essential element with which we are here concerned is proximate causation in the context of a provocative act murder prosecution"].) And while footnote 15 in *Cervantes* (see *ante*) may have, in some respects, foreshadowed *Concha,* the opinion certainly did not make clear that a nonprovocateur accomplice had to personally harbor malice. While *Concha* relied in part on

*Cervantes*'s footnote 15 for its holding, *Concha* did not simply restate the footnote in different words; it meaningfully expanded on it and clarified the point, including by explicitly addressing the role of personal malice in a second degree murder prosecution. (Compare *Concha*, at p. 663 with *Cervantes*, at pp. 872–873, fn. 15.) Thus, we are unconvinced that those earlier cases made clear that malice could not be imputed to nonprovocateur accomplices in provocative act murder cases. Notably, in the wake of *Cervantes*, at least some Courts of Appeal continued to follow the principle that the provocative act murder doctrine does not require proof that a defendant personally harbor malice. (See, e.g., *People v. Lima* (2004) 118 Cal.App.4th 259, 265.)

By contrast, *Concha, supra*, 47 Cal.4th 653, directly addresses the relative mens rea requirements for multiple actors in a provocative act murder case. There, four men, Reyes Concha, Julio Hernandez, Max Sanchez, and an unidentified individual, attempted to rob Jimmy Lee Harris. During the attempted robbery, one of the assailants started to stab Harris, but Harris fought back with his own pocketknife and fatally wounded Sanchez. A jury convicted Concha and Hernandez of Sanchez's first degree murder under the provocative act murder doctrine. We granted review "to determine whether a defendant may be liable for first degree murder when his accomplice is killed by the intended victim in the course of an attempted murder." (*Id.* at p. 658.) In addressing this issue, we observed, "[w]hile joint participants involved in proximately causing a murder ' "are tied to a 'single and common *actus reus*,' 'the individual *mentes reae* or levels of guilt of the joint participants are permitted to float free *and are not tied to each other in any way*. If their *mentes reae* are different, their independent levels of guilt . . . will necessarily be different . . . .' " ' " (*Id.* at p. 662,

14

second italics added.) We then explained, "The defendant or an accomplice must proximately cause an unlawful death, and *the defendant must personally act with malice.*" (*Id.* at p. 663, italics added; see also *Gonzalez, supra,* 54 Cal.4th at p. 655 [citing *Concha, supra,* 47 Cal.4th at pp. 660–661 for the proposition that a provocative act murderer must "personally harbor[] the mental state of malice"].)[6]

In sum, prior to our decision in *Concha, supra,* 47 Cal.4th 653, our case law on provocative act murder "imposed culpability on all perpetrators of the underlying crime so long as the provocateur acted with malice, and did so in furtherance of the common criminal design," provided that the deceased was not the sole provocateur. (*Lee, supra,* 95 Cal.App.5th at p. 1182, citing *Antick, supra,* 15 Cal.3d at p. 89, *Taylor, supra,* 3 Cal.3d at pp. 582–583, *Gilbert, supra,* 63 Cal.2d at pp. 704–705.) Because, under previous precedent, a jury could have imputed malice to a nonprovocateur defendant, the Court of Appeal was

---

[6] We note that, after *Concha, supra,* 47 Cal.4th 653, the same Court of Appeal that issued the opinion below quoted language from our earlier opinions in *Gilbert, supra,* 63 Cal.2d at page 704 and *Taylor, supra,* 3 Cal.3d 578 to find the evidence sufficed to "impute[] malice and first degree murder liability" to the " 'mastermind' " of a home-invasion robbery despite his absence from the scene. (*People v. Johnson* (2013) 221 Cal.App.4th 623, 630, 631.) In deciding the instant appeal, the Court of Appeal noted *Johnson*'s "use of the word 'imputed' was inartful" and it "did not mean to suggest that the mastermind could be convicted of provocative act murder regardless of whether he personally harbored malice." (*Antonelli, supra,* 93 Cal.App.5th at p. 721, fn. 4.) In an abundance of caution, we disapprove of *People v. Johnson, supra,* 221 Cal.App.4th 623 to the extent its analysis may be read to suggest, contrary to *Concha,* that a nonprovocateur accomplice need not personally harbor malice.

wrong to conclude that such a defendant would be categorically ineligible for section 1172.6 relief. (See § 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2 ["Malice shall not be imputed to a person based solely on his or her participation in a crime"]; see also *Strong*, *supra*, 13 Cal.5th at p. 712 ["[S]ection 1172.6, subdivision (a)(3)'s 'because of' language does not require a showing that a claim to relief under Senate Bill 1437 arises from *no other* cause — only that the 2019 changes supply a basis for the claim and so are *a* cause"].)[7]

## B. The Court of Appeal Erred by Deeming the Jury Instructions Irrelevant to the Prima Facie Inquiry

We also granted review to decide a second question in this matter: "Did the trial court err by not considering the jury instructions in determining defendant was ineligible for resentencing as a matter of law for a provocative act murder?" As a general matter, we agree with the Attorney General that "the [section 1172.6] eligibility question will turn on an examination of both the governing law at the time of trial and the record of conviction, including the jury instructions." As we

---

[7] In his reply brief, defendant seems to suggest that we should revisit *Concha*'s articulation of the actus reus for provocative act murder. (See *Concha, supra*, 47 Cal.4th at p. 665 [explaining that "a defendant charged with murder or attempted murder *can be held vicariously liable for the actus reus* of an accomplice" (italics added)].) Defendant appears to assert that, in the wake of Senate Bills 1437 and 775, defendant himself must have committed, or directly aided and abetted, the provocative act, i.e., a *non*provocateur can no longer be guilty of provocative act murder. This question is beyond the scope of the issues before us in this matter and we express no opinion on the issue.

have repeatedly said, "the record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra,* 11 Cal.5th at p. 957; accord, *Curiel, supra,* 15 Cal.5th at p. 460; *People v. Patton* (2025) 17 Cal.5th 549, 563.) In assessing section 1172.6 petitions from individuals convicted following jury trials, the jury instructions will be critical. (See *Curiel, supra,* 15 Cal.5th at p. 441 [looking at "[t]he jury's verdicts, viewed in light of the court's jury instructions" to assess whether the defendant could make a prima facie showing for relief under section 1172.6].) Thus, the Court of Appeal below was incorrect to conclude that the jury instructions were irrelevant to the determination of whether defendant was convicted "pursuant to a 'theory under which malice is imputed to a person based solely on that person's participation in a crime.'" (*Antonelli, supra,* 93 Cal.App.5th at p. 721, quoting § 1172.6, subd. (a).)

In both this matter and in *Lee,* the jury instructions tracked the governing law at the time of the defendants' trials. Specifically, "[c]onsistent with *Gilbert, Taylor* . . ., and *Antick,* the[] [jury] instructions did not require the jury to find that Lee personally acted with malice." (*Lee, supra,* 95 Cal.App.5th at p. 1183.) At defendant's trial, jurors were instructed under CALJIC 8.12 that they could find defendant guilty of provocative act murder if: (1) "[t]he crime of robbery [or] [attempted robbery] was committed"; (2) "[d]uring the commission of such crime, *a person* committing the crime also committed a provocative act"; (3) "[t]he provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life"; and (4) "[s]uch act was sufficiently provocative that [the victim of the robbery]"

reasonably killed one of the robbers.[8]  As we have said before, "the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief . . . ."  (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  However, as we will explain in greater detail below, the Attorney General now contends that, given the unique procedural posture of this case, the trial court correctly denied defendant's second petition as successive without reference to the trial record.  We take no position on the merits of this argument but instead conclude that the best course is for the parties to litigate this issue in the first instance on remand. (See *post*, at pp. 18–20.)

### C.  We Remand Defendant's Case for Further Proceedings

While the parties agree that the Court of Appeal's reasoning was incorrect, they seek different remedies.  The Attorney General argues that "[r]emand is appropriate to

---

[8]   The standard CALJIC 8.12 instruction was revised in the Spring of 2019 in recognition of changes made to section 188 by Senate Bill 1437.  In its amicus curiae brief in support of defendant, the Office of the State Public Defender suggests that the corresponding CALCRIM instruction on provocative act murder, CALCRIM No. 561, should be referred to the Judicial Council for revisions to ensure that the instruction does not permit a jury to impute malice to a nonprovocateur accomplice. The Attorney General agrees that we should refer CALCRIM No. 561 to the Judicial Council for revision "because the model instruction, by itself, does not clearly convey a personal malice requirement for a nonprovocateur."  In light of that potential ambiguity, we conclude it is prudent to refer CALCRIM No. 561 to the Judicial Council of California and its Advisory Committee on Criminal Jury Instructions for its consideration of a possible revision.  (See *People v. Lemcke* (2021) 11 Cal.5th 644, 647; Cal. Rules of Court, rule 2.1050(b).)

permit the Court of Appeal to consider in the first instance whether relitigation of the issue decided at the evidentiary hearing on [defendant's] first petition is barred under principles of collateral estoppel and law of the case." More specifically, the Attorney General explains that the trial court already held "an evidentiary hearing, at which it determined beyond a reasonable doubt that [defendant] is guilty of murder under a currently valid theory," i.e., that defendant was a major participant who acted with reckless indifference to human life. The Attorney General argues that regardless of the fact that defendant was convicted of provocative act murder before 2009, the trial court's prior ruling after an evidentiary hearing precludes defendant from proceeding to a new evidentiary hearing on his current petition. In other words, the Attorney General argues that the trial court's independent grounds for leaving defendant's murder conviction undisturbed are now law of the case and/or have a collateral estoppel effect, and the fact that defendant was convicted of provocative act murder before 2009 (and the precise nature of the jury instructions given on provocative act murder) is irrelevant.

Defendant acknowledges that "neither collateral estoppel nor law of the case was presented as an issue for review," but nonetheless asks us to conclude that neither doctrine applies in his case to bar him from proceeding to a second evidentiary hearing. He asserts, in part, that he cannot be estopped from seeking relief because his second petition was based on new, intervening law in the form of Senate Bill 775. Moreover, defendant contends that he is not precluded from seeking resentencing for a second time because the trial court's findings on his first petition only sufficed for a felony-murder conviction under current law, not a provocative act murder conviction.

According to defendant, the trial court's prior findings that he was a major participant in the robbery who acted with reckless indifference to human life are insufficient because, under current law, he cannot be guilty of provocative act murder unless there is a finding that he committed or aided "the commission of a provocative act with malice." In other words, defendant contends the superior court upheld defendant's provocative act murder conviction based on the felony-murder doctrine — a doctrine that, as explained *ante*, cannot support a murder conviction "[w]hen someone other than the defendant or an accomplice kills during the commission or attempted commission of a crime." (*Gonzalez, supra¸* 54 Cal.4th at p. 654.)

We agree with the Attorney General that the issue of whether the trial court's 2019 denial of section 1172.6 relief has any preclusive effect on defendant's current claim for section 1172.6 relief is best assessed by the Court of Appeal in the first instance.

## III.   DISPOSITION

We reverse the judgment of the Court of Appeal. The cause is remanded to the Court of Appeal for further proceedings consistent with the views expressed herein.

**GROBAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Antonelli

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 93 Cal.App.5th 712
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S281599
**Date Filed:** April 24, 2025

_____

**Court:** Superior
**County:** Ventura
**Judge:** Ryan J. Wright

_____

**Counsel:**

Claudia Y. Bautista, Public Defender, and William M. Quest, Deputy Public Defender, for Defendant and Appellant.

Galit Lipa, State Public Defender, and Samuel Weiscovitz, Deputy State Public Defender, for the Office of the State Public Defender as Amicus Curiae on behalf of Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

William M. Quest
Deputy Public Defender
789 South Victoria Avenue, Suite 307
Ventura, CA 93003
(805) 654-3032

Theresa A. Patterson
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6004